[Marengo Abstract Co. v. Hooper & Co.]

# Marengo Abstract Co. *v.* Hooper & Co.

### *Breach of Contract.*

(Decided November 21, 1911. 56 South. 580.)

1. *Contracts; Validity; Presumption.*—The presumption is in favor of the validity of contracts.

2. *Gaming; Future Delivery; Intention.*—Intention at the time of contracting determines the validity of a contract for future delivery of a commodity, and where the intention of both the parties at the time of contracting is that no property in the commodity shall pass, or that no delivery in kind shall be made, the contract for future delivery is illegal as a wager on the fluctuation in the market price of the commodity.

3. *Same.*—The intention which determines whether or not a contract for future delivery is a wager is not the secret design in the party's mind, but the purpose implied and manifested by his act.

4. *Same.*—If a contract manifests an unmistakable intention to constitute an illegal contract for future delivery of a commodity, it is void both at the common law and under the statute; and evidence aliunde is not admissible to turn the purpose and intention to a lawful object.

5. *Same.*—The inquiry of illegality vel non in the terms of a contract for future delivery of a commodity is not concluded independent of nor under section 3349, Code 1907, by the freedom of the form and terms of the contract from indicia of illegality.

6. *Same; Action; Complaint.*—Where a contract for future delivery of a commodity is fair on its face, the intention of the parties in making the contract need not be alleged in the complaint seeking to enforce it, either independent of or under the terms of section 3349, Code 1907.

7. *Same; Plea; Invalid Intention.*—As an answer to a complaint on a contract for future delivery of a commodity, a plea which simply alleges an intention of the defendant inconsistent with a valid contract, is not sufficient, since such intention must have been common to both parties.

8. *Same; Action; Plea.*—Where the complaint states a contract for future delivery of a commodity, valid on its face, a plea which merely states that the defendant was not one of the class of persons, firms or corporations which are excluded from the operation of section 3349, Code 1907, by section 3350, Code 1907, is patently bad.

9. *Same; Ownership of Property.*—Where one contracts to deliver cotton at a future date, the fact that he neither owns the cotton nor has lands in cultivation from which cotton for such delivery might be raised, does not invalidate the contract.

32—174

[Marengo Abstract Co. v. Hooper & Co.]

10. *Corporations; Ultra Vires; Pleading.*—The want of corporate power in the defendant to make the contract sued on is sufficiently pleaded by simply alleging that the contract was ultra vires the corporation; or ultra vires its charter powers.

11. *Same; Powers.*—A valid contract to sell cotton for future delivery is within the power of the corporation organized to buy and sell personal property.

12. *Pleading; to Common Count.*—A Plea to a common count should point out that the contract to which it refers is the basis of liability declared on in the count, and failing to do so, is demurrable.

(McClellan, J., dissents.)

APPEAL from Marengo Law and Equity Court.

Heard before Hon. EDWARD J. GILDER.

Action by the firm of C. W. Hooper & Co. against the Marengo Abstract Company for breach of contract. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The contract set out in the complaint is as follows: "Selma, Ala., May 25, 1909. We hereby confirm sale made for our account by C. W. Hooper & Co., of Selma, Ala., of 100 square bales of cotton, to average between 500 pounds and 525 pounds per bale at 10½ cents per pound, basis middling; Selma Cotton Exchange difference prevailing at time of delivery. We hereby agree and bind ourselves to deliver this cotton at Selma, Ala., in warehouse, during months of September, October, November, and December, 1909, and not less than 25 per cent. monthly, until contract has been completed; but we have the option of completing this contract in September and October, 1909, as we should desire. It is understood that no water packed, damaged, seedys, sandys, false packed, sample bales, or light weights will be delivered on this contract. Given under our hands and seals this 25th day of May, 1909. Marengo Abstract Company, by E. E. Taylor, President and General Manager. Attest: Garland Kirvan, Secretary and

Treasurer." The substance of the counts of the complaint is set out in the opinion of the court.

The following are the pleas noted in the opinion: (3) "That the defendant is a corporation, as alleged in the complaint; that at the time of making the alleged contract with the plaintiff defendant did not have on hand any of the cotton alleged in said contract to have been sold, nor was the defendant, at the time of such alleged sale, cultivating any land upon which it could raise said 200 bales of cotton, during said year, and said alleged sale and contract was ultra vires the corporation." (4) "That the defendant is a corporation, as alleged in the complaint, and the contract alleged to have been made by it was for the future delivery of cotton, and said corporation did not have or own, at the time of making said contract, any cotton, and was not, at such time, cultivating lands from which it could raise said cotton, and said contract was made for the purpose of speculating upon the price of cotton at the time of its delivery, and said contract was ultra vires the charter of said corporation."

Pleas 3 and 4 were amended by subsequently adding at the end of each the following words: "For that the defendant averred that the defendant was incorporated on the 12th day of January, 1905, and the object for which the corporation was formed was only for the purpose of engaging in the business of making and furnishing abstracts of title to real estate, to make a complete abstract of title to all lands in Marengo county, to buy, sell, hold, or mortgage real or personal property, to own and conduct an insurance business, to act as agent for fire, life, and other insurance companies, to solicit and write insurance of any form, and to collect premiums for same, to lend money upon personal security, stocks, and other negotiable instruments, and to take

and receive security by mortgage and likewise on property, real or personal, to have and enjoy all the rights, powers, and privileges conferred upon business corporations, organized under the laws of Alabama under the act approved October 20, 1903, and that defendant had no other and further powers than were conferred upon it by said act of October 20, 1903, and that the business of engaging in farming operations and buying and selling cotton for future delivery, for speculative purposes, was not within the scope or power or purpose of said defendant organization." Plea 6, before amendment, was as follows: "That at the time of making the alleged contract the defendant did not own or have in possession said cotton agreed to be delivered, and none of said cotton was actually delivered at the time of making said contract, and the defendant had no intention of actaully delivering said cotton, but only intended to pay the difference between the selling price and the market price of said cotton at the time agreed on for its delivery, or to collect the difference between the selling price and the market price of same at the time for its delivery, as it might be at the time of delivery agreed upon, greater or less than the price at which it was agreed to be sold." The plea was later amended by adding the amendment added to pleas 3 and 4 as above set out. (7) "That at the time of making said alleged contract for the sale and delivery of said cotton the defendant was not a person, firm, or corporation, or was his or its or their agent engaged in the business of manufacturing or wholesale merchandise, in the purchase or sale of the necessary commodities required in the ordinary course of its business." There were two contracts, both as set out above, except of different dates.

PETTUS, JEFFRIES, PETTUS & FULLER, and ABRAHAMS & TAYLOR, for appellant. The demurrers should have

[Marengo Abstract Co. v. Hooper & Co.]

been sustained, as the counts fail to set out and show a
valid and legal consideration for the contract sued on.
—*Newton v. Brook,* 134 Ala. 272; *Ivey O. & C. Co. v.
Long,* 139 Ala. 535; *M-B. Mer. Co. v. Greer,* 53 South.
810. If, in fact, it was not intended by the parties
thereto that there should be actual delivery of the goods
sold, the contract is void, notwithstanding it may be
valid on its face.—Section 3349, Code 1907. The de-
fendant is not shown to be within the class exempted
from the operation of the above section by the terms of
section 3350, Code 1907. The intention with which
the contract was entered into should be alleged as a
part of the consideration of the contract, and be proved
as well as alleged to be valid and legal.—Authorities
supra. The counts show prima facie that the dealings
between the parties were the ordinary dealings in what
is called futures.—10 A. & E. Enc. of Law, 606; Sec.
3349, Code 1907. The defendant being a corporation,
had no power to engage and deal in speculative con-
tracts.—*Jemison v. Citizens' Sav. Bank,* 122 N. Y. 135;
*Chewacla L. Wks. v. Dismukes,* 87 Ala. 346; *Alexander
v. Caldwell,* 83 N. Y. 480. The contract was ultra vires
the corporation.—36 Ala. 313; 54 Ala. 77; 65 Ala. 448;
87 Ala. 344; 120 Ala. 128; 159 Ala. 444. A corporation
is not estopped from setting up the invalidity of the
contract in this case.—*Sherwood v. Alvis,* 83 Ala. 115;
*First Nat. Bank v. Henry,* 159 Ala. 398, and cases there
cited.

CHAMBLISS KEITH, for appellee. In the preparation
of appellant's brief there is an utter disregard of rule
10, and hence, errors assigned are waived.—*So. Ry. Co.
v. Cunningham,* 112 Ala. 496; *Fitts v. Phoenix Auc. Co.,*
153 Ala. 635; 6 Mayf. 33. The cases cited by appellant
in support of the proposition that the counts were de-

murrable merely affirm the common rule stated by Mr.
Chitty in 1 Chitty on Pleadings, star page 300; 4 Enc.
P. & P. 930. The principles governing the contract un-
der consideration are well settled.—*Hawley v. Bibb,* 69
Ala. 52; *Wolffe v. Perryman,* 93 Ala. 290; *Allen v. Cald-
well,* 149 Ala 293. The intention on the part of one
party undisclosed or unknown to the other party, that
there should be no actual delivery of the commodity
would not invalidate the contract or violate section
3349, Code 1907.—Authorities next above. Pleas to the
common counts setting up the invalidity of the contract
should allege that the contract pleaded was the basis
of recovery for the counts.—*Newsom v. Huey,* 36 Ala.
37. Ultra vires must be presented by special plea.—121
Ala. 594; 139 U. S. 62. The presumption is that a cor-
poration has the authority to make the contract, and
the burden of showing ultra vires, is on the corporation.
—*Touart v. Jett Bros.,* 53 South. 751; *Torrant Engine
Co. v. Mobile,* 101 Ala. 551; *Boulware v. Davis,* 90 Ala.
207. To make good the defense of ultra vires, it must
be shown that the act is outside of the expressed or im-
plied power of the corporation.—*Oxford I. Co. v.
Spradley,* 46 Ala. 98. The presumption of law is that
the contract is valid.—*Hubbard v. Sayer,* 105 Ala. 440;
*Hooper v. Nuckels,* 39 South. 711. The fact that the
party selling the commodity did not have it at the time
the contract was made will not invalidate the contract.
—*Perryman v. Wolffe, supra; Hawley v. Bibb, supra.*
The corporation had the power to make the contract.—
*Farmers L. & T. Co. v. Curtis,* 7 N. Y. 466; *University v.
Detroit,* 12 Mich. 138.

McCLELLAN, J.—It is doubtless well at this time
to note that this appeal is from a judgment expressing
rulings on demurrers to pleadings in an action at law,

and that the appeal is justified by the act creating the law and equity court of Marengo county.—Acts Sp. Sess. 1909, pp. 339, 356, § 26.

The presumption is that contracts are valid. Courts will not presume that parties to a contract intended to violate the law; and the legal intendment is to construe contracts to uphold, not to defeat them, if that may be done consistently with the expressed intent of the parties.—*Culver v. Caldwell,* 137 Ala. 125, 34 South. 13; *Perryman v. Wolffe,* 93 Ala. 290, 9 South. 148; *Nelson v. Manning,* 53 Ala. 549; 9 Cyc. p. 586; *Curtis v. Gokey,* 68 N. Y. 300; *Ormes v. Dauchy,* 82 N. Y. 443, 37 Am. Rep. 583.

Intention, at the time of contracting, is the factor that does and will determine whether a contract for future delivery of a commodity is legal, and hence binding, or void, because of being a wager upon market fluctuations, and therefore unenforceable.—*Hawley v. Bibb,* 69 Ala. 52; *Perryman v. Wolffe,* 93 Ala. 290, 9 South. 148; *Allen v. Caldwell,* 149 Ala. 293, 42 South. 855; Code 1907, § 3349. If the *intention* of *both the parties,* at the time of contracting, be that no property in the commodity shall pass, or that no delivery in kind shall be made, the engagement is illegal, for it is a wager upon the fluctuations of the market.—Authorities supra.

Intention, that will control in this regard, is not the "secret design which may dwell in a party's mind and as to whose existence he alone can speak."—*Bank v. North,* 160 Pa. 303, 308, 313, 28 Atl. 694, 696; 9 Cyc. p. 578. It is the purpose "implied and manifested by his act."—Authorities supra. At common law or under the statute, if the contract manifests an *unmistakable* intention by the parties, to constitute an *illegal* contract for the future delivery of commodities, it is void upon

its face. No evidence aliunde can be received to turn the purpose and intent toward a lawful object.

At common law and under the statute (Code, § 3349), that the form and terms of the contract for future delivery of commodities are free from indicia of illegality did not—does not—conclude the inquiry of illegality vel non, for the real intention of the parties may be found by recourse to proper evidence tending to show the "nature of the true transaction and the circumstances attending it."—*Hawley v. Bibb, supra;* Code, § 3349.

If a contract for the future delivery of commodities is fair on its face—without indicia of illegality refuting the presumption that parties do not intend to make an illegal contract of that character—obviously (omiting, at this stage, consideration of our statute [Code, § 3349]) the assertion of such a contract, with a view to the enforcement of its obligations would not require the pleader thereof to affirm that the intention of the parties in the premises was to deal in the property, and not to wager upon market fluctuations. To conclude otherwise would be to *initially* impose upon such a party to a contract, fair upon its face, the duty of allegation of his innocence and of the validity of his contract, when and as he engaged, and, in consequence, to lay upon him the onus of sustaining the allegations. The presumptions stated refute any such conclusion.

Has our cited statute altered this matter as respects the assertion in pleading of such contracts? We think not. There is nothing in the statutes on this subject, which are a codification of the act approved March 7, 1907 (Gen. Acts 1907, pp. 448, 452), whereupon it could be contended that the legislative intention was to deny the application of the mentioned presumptions to contracts free from illegality on their faces. Indeed,

[Marengo Abstract Co. v. Hooper & Co.]

from the provision made in section 2 of the act (Code, § 3351), with respect to the effect, prima facie, of *evidence* of certain, defined character, the necessary implication is that the Legislature did not intend to impose the burden of allegation and proof upon a party asserting, with a view to its enforcement, a contract for future delivery.

A very different statutory status was involved in *Gist v. W. U. Tel. Co.*, 45 S. E. 344, 23 S. E. 143, 55 Am. St. Rep. 763. There the statutes expressly laid the burden of proof upon any one seeking to enforce a right or obligation arising out of a contract for future delivery; and, besides, the major statute of the system of laws there considered condemned *every* future delivery contract "unless" the engagement possessed the elements requisite to make a valid contract of that character under that system. It was there ruled that no cause was stated, "unless" the requirements of the system, to render such a contract valid, were affirmatively alleged. One of the differences between that system and our own (Code, c. 6, art. 5) is that between a general prohibition *with a legal exception* and a prohibition directed against specific acts of a larger class. There the pleader, must, by averment, bring his contract, if it be valid at all, within the purview of the *exception* from the major prohibition. His obligation is affirmative. The contract being valid upon its face, with us the presumption of intention to validly engage refers the contract to the law that will sustain it—that sanctions its validity. The *result* under the South Carolina system and that under our own would be, in substance, the same; but the burden of allegation and proof is not, as indicated, the same. Hence it must be held, as indicated, that this general rule applies, namely, that he who would defeat a contract, valid on its face, for illegality,

has the burden of allegation to that end.—9 Cyc. p. 762; *Gafford v. Speaker*, 125 Ala. 498, 27 South. 1003; 5 Mayf. Dig., p. 371.

Counts 1, 2, 4, and 5 of the amended complaint stated a cause of action in each. Without attempting particularity in the statement, upon their respective averments, these counts set forth contracts for the sale of stipulated quantities of cotton, for delivery at designated points, at a specified price and grade. The substance of the contracts was that appellees, who were cotton brokers, agreed to sell certain quantities of cotton "for account" of appellant. The consideration shown in these counts, moving from appellant to appellees, was 50 cents per bale. There is nothing in the contracts therein set forth evincing any other intention of the parties than to deliver the commodity—to deal in the substance, and *not* to merely wager upon the market changes. The contracts were, on their faces, valid. They consist with legal undertakings. The objection, taken by the demurrers and argued in brief for appellant, that the counts should have contained other allegations excluding the elements working invalidity, as provided in the cited statutes, cannot be approved. The court below, therefore, did not err in so ruling on this phase of the demurrers.

If the pleas purporting to assert that the contracts declared on were ultra vires the corporation were predicated upon the idea that the contracts were, on their faces, wagering transactions, and therefore void and without the corporate powers of the defendant, what has been said before in respect to the contracts will suffice to indicate our opinion that that theory cannot be approved. If the corporation possessed the power to lawfully deal as the contracts on their faces show was undertaken, it is evident, upon authority, that owner-

ship of the cotton, at the time of contracting, engaged to be delivered, was not with the defendant, or that it had no lands in cultivation wherefrom cotton, for such delivery, might be gathered, are not essential to constitute a *valid* contract for the future delivery of the community.—*Hawley v. Bibb,* 69 Ala. 52, 55. Ultra vires must be especially pleaded when to be offered in avoidance of contractual obligation.—5 Ency. Pl. & Pr. 95; 10 Cyc. p. 1056; *Bank v. Pence,* 59 Neb. 579, 81 N. W. 623. The presumption is that contracts by corporations are justified by their powers.—*Boulware v. Davis,* 90 Ala. 207, 211, 8 South. 84, 9 L. R. A. 601; *Ala. Ins. Co. v. C. A. & M. Ass'n,* 54 Ala. 73. In such matters, the burden of proof follows the burden of allegation.

Original pleas 3 and 4 will be set out in the report of the appeal. They were demurred to upon the ground, among others, that the allegation that the contracts were ultra vires the corporation was a conclusion of the pleader. The demurrer was sustained. The court holds that while, under the authority of *Hawley v. Bibb, supra,* the averments of these pleas, preceding the summary allegation of ultra vires, did not, if true, lead to the result that the sales of cotton for future delivery were ultra vires the corporation (if the corporation was authorized to lawfully deal as the contracts on their faces show was undertaken), the concluding allegation of ultra vires was not subject to the demurrer interposed; and therefore the court erred in sustaining the demurrer to original pleas 3 and 4.

In this ruling the writer is unable to concur. The proposition affirmed by the ruling limiting its statement to character of action here presented is that the want of corporate power is sufficiently pleaded, in bar of the recovery sought, by the simple allegation that the contract in question was "ultra vires the corporation,"

or was "ultra vires the charter of the corporation." Corporations are creatures of special statutes or general law authorizing their organization, and possess only such powers as are expressly granted, or such as are necessary to carry into effect the powers so expressly granted.—*Chewacla Lime Works v. Dismukes,* 87 Ala. 344, 346, 6 South. 122, 5 L. R. A. 100; 10 Cyc. p. 1096, and notes thereon. What the powers and properties of such creatures of the law are, is, as in all cases of the construction or interpretation of written instruments, an inquiry *for the court* and *not for the jury.*—1 Thompson's Com. on Corp., § 1237; *S. M. & M. R. R. Co. v. Anderson,* 51 Miss. 829, 834. It is an elementary rule that a plea must set up the facts constituting the defense, and not the pleader's legal conclusion deduced therefrom.—16 Ency. Pl. & Pr. p. 564; 12 Ency. Pl. & Pr. p. 1024 et seq.; 31 Cyc. p. 49 et seq.

In this instance, the variety of the general allegation of ultra vires depended upon the charter powers, express and implied, of the private corporation. To justify, against the demurrer, this general allegation, the pleader must be accorded the prerogative to construe the defendant's unpleaded charter.—*Broad Street Hotel Co. v. Weaver's Adm'r,* 57 Ala. 26. This cannot, under principle and authority, be permitted. The question in hand was, in principle, decided in *Savage & Darrington v. Walshe & Emanuel,* 26 Ala. 619, 632. The action was on a note given by Savage and others to the Planters' & Merchants' Bank. Among other pleas filed was the fifth, wherein it was alleged "that said bank, at the date of said note, had no power or authority to make a contract, and that the said note was null and void." There the effort was by the payers to defeat their obligation to the corporation by the assertion of its want of power to contract. Here the corporation it-

self would assert its *want* of charter power to contract as plaintiff alleges. Of the plea quoted this court, through Goldthwaite, J., said: "In the action of the court in sustaining the demurrer to the  *  *  *  fifth pleas there was no error.  *  *  *  The same objection applies to the second and fifth pleas, both of which assert legal conclusions instead of facts."

The method and sufficiency of pleading ultra vires was considered in *Life Association v. Cook,* 20 Kan. 19, 2. It was there said: "In this case, if the defendant Westerman wished to raise by her answer the question that the loaning of money by the plaintiff to Cook on real estate security in Kansas was ultra vires, and forbidden, she should have pleaded its charter, or the laws of the state where it was organized, or both such charter and laws, and on the trial produced the same evidence." There are many instances in our reports where the principle illustrated by the cases cited has been noted and applied. The writer, therefore, dissents from the ruling holding original pleas 3 and 4 not subject to the demurrer, and hence would affirm the judgment appealed from.

Plea 6, as originally filed, alleges an intention entertained by the "defendant" inconsistent with a valid contract of this character. Such an intention must be common *to the parties* in order to render the contract illegal.—*Hooper v. Nuckles,* 39 South. 711. The plea was defective on that account, and the court did not err in sustaining the demurrer thereto.

Plea 7 was patently subject to the demurrer. It appears to have been but a reiteration of Code, § 3350. That section's sole office is to exclude a certain class of persons, firms, or corporations from the provisions of the preceding section 3349. Plea 7 contained no averment challenging the validity of the contracts sued on,

or asserting, in any degree, the corporation's want of power to so engage.

Plea 5 was also addressed to count 3 as amended. It was a common count. The plea omitted to allege that the contracts to which it referred were the bases of liability declared on in amended count 3. The demurrer taking this point was well sustained.

As amended pleas 3, 4, and 6 set forth the corporate powers of the defendant, as a predicate for the allegation that the contracts declared on were ultra vires the corporation. In its charter it was authorized "to buy, sell, hold or mortgage * * * personal property." Granting, as appears prima facie, that the contracts described were valid, no reason occurs to us, nor has any been pointed out, why the dealing indicated was not within the corporate power to buy and sell personal property. It could not be doubted that the corporation has thereunder the power to buy and sell cotton. If such power it had, it would seem to necessarily result that it could engage to sell as, on their faces, these contracts purport to do. The court did not, therefore, err in sustaining the demurrer to amended pleas 3, 4, and 6.

For the error indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded. All the Justices, save the writer, concur.

McClellan, J., dissents.